UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE

CHANDA S. CARR                                    CASE NO. 19-20873

DEBTOR                                                     CHAPTER 7

MEMORANDUM OPINION AND ORDER
ON CHAPTER 7 FEE PRACTICES

May an attorney limit the scope of their bankruptcy services to a prepetition analysis of a

debtor's bankruptcy options and filing the debtor's skeletal chapter 7 petition?  In short, if done

properly, yes.

Much has been written about attorneys' attempts to "unbundle" services and "bifurcate"

their fee arrangements in chapter 7 proceedings.  By these efforts, counsel seek to avoid the

result occasioned by *Lamie v. United States Trustee*, 540 U.S. 526 (2004), *Rittenhouse v. Eisen*,

404 F.3d 395 (6th Cir.), *cert. denied* 546 U.S. 872 (2005), and § 329;[1] to wit, that agreements by

chapter 7 debtors to pay a portion of their attorneys' fees post-petition are unenforceable

dischargeable debts.

In this case, the Court sought information from J. Christian A. Dennery, Esq. and

Dennery, PLLC (collectively, the "Attorneys"), *sua sponte*, upon the Court's review of the

Attorneys' "Disclosure of Compensation of Attorney for Debtors" [ECF No. 19 (the "Fee

Statement")].  The Fee Statement discloses that the Attorneys received $300 from chapter 7

Debtor Chanda S. Carr prepetition and were to be paid $1,185 post-petition.  After the Court

determined that Debtor did not schedule any debt owed to the Attorneys, the Court reviewed

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.
References to the Federal Rules of Bankruptcy Procedure appear as "Rule ____."

other chapter 7 cases involving the Attorneys and discerned that they had filed many cases with similar fee disclosures.  As a result, although the Court had no concerns about the quality of the Attorneys' representation of chapter 7 debtors, the Court entered a series of orders [ECF Nos. 28, 37, 42] which, *inter alia*, (i) required the Attorneys to file their written engagement agreement and other documents relating to their representation of Debtor, (ii) required the Office of the United States Trustee ("UST") to respond to the Attorneys' filings, (iii) set a hearing to discuss the Attorneys' fee practices, and (iv) authorized the filing of post-hearing memoranda.  The matter is now ripe for review and decision.

## THE ATTORNEYS' CHAPTER 7 FEE PROCEDURES

**I.      The Attorneys' general engagement practices for chapter 7 cases.**

**A.      The Disclosures.**

From the Attorneys' submissions[2] and the colloquy at the hearing, the Court concludes that the Attorneys have a clearly defined process for contracting with debtor-clients in chapter 7 cases.  When a prospective debtor contacts the Attorneys, they schedule and hold an initial meeting to discuss the bankruptcy process.  At that time, the Attorneys also obtain the names of creditors and other background information sufficient to assess the debtor's bankruptcy options, if any.

If a chapter 7 case is deemed appropriate, the Attorneys present the debtor with two payment options for retaining the Attorneys via a written disclosure [*e.g.*, ECF No. 35 at 2-3 (the "Disclosure")] that the Attorneys and the debtor review together.  First, the Attorneys advise that they can provide services to the debtor for a flat fee paid prepetition (typically $800) plus the

---

[2] Dolores L. Dennery, Esq., a member of Dennery, PLLC, signed the Declaration that the Attorneys tendered in response to the Court's initial inquiry.  The declaration details her meetings with Debtor and the law firm's business practices for chapter 7 engagements.  [ECF No. 36-1.]

chapter 7 filing fee ($335) for a total prepetition payment of $1,135. Alternatively, if the debtor

cannot afford this option, the Attorneys offer an arrangement in which the Attorneys accept

payment prepetition and post-petition pursuant to separate contracts (the "Dual Contract

Option"). The Attorneys report that most of their clients choose the second option.[3]

The Disclosure explains that, under the Dual Contract Option, the debtor generally pays

the Attorneys $300 prepetition (or $400 for joint debtors) for initial limited prepetition services,

which include preparing and filing the petition and the list of creditors (the "Skeletal Chapter 7

Case"), the Rule 2016(b) compensation disclosure, and an application requesting the Court's

authorization for the debtor to pay the chapter 7 filing fee in installments. The Disclosure also

expressly states what services the Attorneys will not provide under a prepetition fee agreement:

> **Excluded Services and Client responsibilities:** Unless you retain us to
> complete your case, you will be solely responsible for, among other things: (1)
> filing the balance of the documents required to complete your petition; (2) timely
> providing documents to the US Trustee and to the Chapter 7 Trustee; (3)
> attending the "meeting of creditors;" (4) reaffirming debts with secured creditors;
> and (5) timely making installments [*sic*] payments on the filing fee. **Beware: the
> failure to timely file documents and/or make installment payments can result
> in a dismissal of your case.**

[*Id*. at 2 (emphasis in original).] The Disclosure also states that the Attorneys are willing to

provide post-petition services to the debtor, subject to the post-petition execution of a second

agreement:

> **Post-Petition Services.** You are under no obligation to retain us after the filing
> of the skeletal petition - you will be free to retain any other attorney of your
> choice, or continue the case on your own (*pro se*). If you decide to retain us, we
> will enter into a separate agreement that covers the routine services required to
> complete the case. (The "post-filing routine services"). By this proposal, we are

---

[3] The Disclosure states that the Attorneys "reserve the right not to offer payment plans to persons whom we
determine are not likely to succeed in bankruptcy, or [are] unable to afford the monthly payments." [ECF No. 35 at
2.]

offering to provide post-filling [*sic*] routine services for $1,185.00, which
includes the filing fee of $335.00.

[*Id*.]

The Disclosure advises that, if the debtor selects the Dual Contract Option, the debtor

must pay the Attorneys $98.75 per month for 12 months for the "post-filing routine services"

(including the filing fee), which totals $1,185.  It explains the consequences of the overall

arrangement with respect to the dischargeability of the legal fees:

> **PLEASE NOTE THAT:**  Any balance on the attorney fees that remains
> outstanding at the time the skeletal petition is filed will be discharged and
> unenforceable against you.  However, any agreement for post-filing services will
> create a debt that is not affected by the bankruptcy filing.  **You will remain
> personally liable for any amounts due on account of post-filing services and
> could be sued for any default under the chapter 7 payment plan.**

[*Id*. at 3 (emphasis in original).]  The Disclosure sets forth the proposed payment schedule and

states: "**If you cannot follow this schedule, you should not enter a Chapter 7 Payment Plan.**"

[*Id*. (emphasis in original).]

## B.      The First Contract (prepetition).

If a debtor chooses the Dual Contract Option, the Attorneys present the first engagement

agreement to them for execution [*e.g.*, ECF No. 35 at 4-7 (the "First Contract")].  That four-page

document expressly identifies the prepetition services to be provided:

> (b) <u>Petition Preparation and Filing</u>. Attorney shall: (i) prepare the petition; (ii)
> review the petition with the client; and after Attorney receives the completed
> credit counseling certificate shall file: (A) the petition; (B) a creditor matrix; (C)
> an application for payment of court fees in  installments; and (D) a statement of
> attorney compensation, which discloses to the court the terms of this agreement
> and any related proposal and/or statement of work….

[*Id*. at 4.]  The First Contract explicitly discloses the "excluded services" that the Attorneys will

not provide thereunder.  It also states that "the representation created by this agreement shall

naturally terminate immediately after the filing of the skeletal petition."  [*Id*.]

The First Contract also discloses the post-petition work the Attorneys are willing to perform if the debtor opts to engage them post-petition. The First Contract advises that the debtor should engage an attorney post-petition even if they do not retain the Attorneys. It also summarizes the terms under which the Attorneys would agree to provide that post-petition work and states that the debt created by a post-petition agreement would not be dischargeable. The Attorneys discuss each term of the First Contract with the debtor in person, answer any questions, have the debtor initial each paragraph thereof as it is discussed, and have the debtor sign the document at its end.

After the parties execute the First Contract, the Attorneys will prepare, finalize and file the Skeletal Chapter 7 Case, the credit counseling certificate, and an application to pay the filing fee in installments. However, the Attorneys advised at the hearing (and the record in this case confirms) that, while the First Contract states that the Attorneys will file a "statement of attorney compensation" with the petition, this is not the Attorneys' typical practice. Rather, they usually wait to file their Fee Statement until they determine whether they are retained post-petition. This alleviates the need to file an initial Fee Statement with the petition (reporting the prepetition fee paid only) and an amended Fee Statement, as Rule 2016(b) requires, if the debtor retains the Attorneys for post-petition services.

### C.        The Second Contract (post-petition).

If the debtor elects to retain the Attorneys' services post-petition (which, the Attorneys report, almost always occurs), the Attorneys and the debtor have a post-petition meeting. In other words, and importantly, the debtor will not sign a prepetition contract and a post-petition contract on the same date. At the post-petition meeting, the Attorneys and the debtor review the next contract, titled a "Statement of Work and Promissory Note" [*e.g.*, ECF No. 35 at 8-11 (the

"Second Contract")].  As with the First Contract, the Attorneys have the debtor initial all

paragraphs and sign the Second Contract at its end.

The Second Contract delineates the "routine" post-petition chapter 7 work the Attorneys

agree to perform:

> **Scope of Post-Filing Routine Services:** Attorney shall: (1) meet with client; (2)
> review available documentation and information; (3) transmit required documents
> to the UST and to the chapter 7 trustee: (4) file any documents, lists, statements,
> applications required to complete the petition after reviewing such with client; (5)
> appear at the meeting of creditors; (6) draft and file not more than one responsive
> pleading to a motion for relief from stay; (7) take reasonable measures to retrieve
> any and all monies garnished within 90 days of the bankruptcy filing; (8) review
> and execute any reaffirmation or assumption of lease agreements; (9) arrange for
> the required financial management course; and (10) pay the filing fee of $335.00.
> (the "post-filing routine services").

[*Id*. at 8.]  The Second Contract specifically excludes certain "non-routine" services (e.g.,

dischargeability actions, motions to avoid judicial liens) that are outside the scope of the

representation thereunder and states that the Attorneys will perform "non-routine services" for an

hourly fee.[4]

The Second Contract provides that the debtor agrees to make equal payments to

the Attorneys over 12 months at the rate of $98.75 per month (which includes interest on

the financed portion of the legal fee at the rate of 7.55% per annum).  The Attorneys also

obtain the debtor's permission to run a credit check, given that the Attorneys are agreeing

to finance the legal fees over time.

The Second Contract states that the Attorneys will advance the money to pay the debtor's

chapter 7 filing fee but that the debtor is ultimately responsible for the filing fee and the costs

---

[4] According to both the First Contract and the Second Contract, for non-routine services, the Attorneys charge
$200/hour for attorney time and $85/hour for paraprofessional/administrative time.

related to their case.  The Second Contract provides for the application of a debtor's payments to

the Attorneys as follows:

> **Application of Payments.** Payments received by [the Attorneys] will be applied
> in the following order: (i) to the installment payments on filing fees if any
> remaining due and owing; (ii) to interests and charges; and (iii) to the Principal
> due under this Agreement.

[*Id*. at 9.]  It advises that the Attorneys will collect post-petition payments from the debtor's bank

account.  The Attorneys confirmed at the hearing that they do not accept credit card payments

from debtors or enter into factoring agreements (i.e., sell or assign the debtor's post-petition debt

to a third party in exchange for a discounted lump-sum payment).

Because the Attorneys are accepting a prolonged payment plan, and because (in the

Attorneys' experience) Dual Contract Option cases typically require more effort than up-front-

flat-fee chapter 7 cases, the total legal fee charged to the debtor for a Dual Contract Option case

exceeds that of an up-front-flat-fee case by $350.

## II.      Debtor's engagement of the Attorneys in this case.

The Attorneys' interactions with Debtor were consistent with their standard chapter 7

practices outlined above.  On June 13, 2019, Debtor had a lengthy initial meeting with the

Attorneys to discuss filing for bankruptcy relief.  The Attorneys used the Disclosure to lay out

Debtor's options for chapter 7 representation.  The Attorneys provided a hard copy of the

Disclosure to Debtor and had Debtor sign it.  Debtor also initialed and signed the a First Contract

with the Attorneys for services in accordance with the Dual Contract Option.[5]  Debtor paid a

$300 fee for the preparation and filing of the Skeletal Chapter 7 Case, the application to pay the

chapter 7 filing fee in installments, the credit counseling certificate, and the Fee Statement.  And,

---

[5] The Attorneys did not tender copies of their contracts with Debtor that the Attorneys had signed.  The Attorneys
explained at the hearing that the Attorneys and Debtor signed the agreements in counterparts, and that Debtor
received copies of the documents that the Attorneys signed.

Debtor provided information to the Attorneys to begin the process. The First Contract stated that the Attorneys were willing to provide Debtor with post-petition services subject to the post-petition execution of a second agreement. The Attorneys expressly advised Debtor that she had no obligation to engage them to perform additional post-petition services, and Debtor initialed the First Contract to acknowledge this disclosure.

The Attorneys filed Debtor's Skeletal Chapter 7 Case, credit counseling certificate, and application to pay the filing fee in installments on Saturday, July 6, 2019, but did not file the Fee Statement. Two days later, on July 8, the Court entered an Order requiring Debtor to file her schedules and related missing paperwork within 14 days of the petition date (July 20). On Sunday, July 21, the Attorneys moved for an extension of time within which to file the missing schedules and other initial documents, and the Court granted that motion the following day.

On July 25, 2019, at her second meeting with the Attorneys, Debtor initialed and signed a Second Contract and thereby retained the Attorneys to provide post-petition services in her case. On August 14, 2019, the Attorneys filed Debtor's required schedules and other documents, including the Fee Statement. As noted above, the Court's review of the Fee Statement started the chain of events that led to this opinion.

While the Court's investigation regarding the Attorneys' fee practices proceeded, Debtor's chapter 7 case continued to move forward. On October 10, 2019, the Attorneys filed a certificate confirming that Debtor completed a financial management course. On November 5, a creditor filed a reaffirmation agreement with Debtor, which indicates that the Attorneys represented Debtor during the negotiation of that agreement. And, on December 20, Debtor received a chapter 7 discharge.

## ANALYSIS

The Court has jurisdiction herein and venue is proper.  28 U.S.C. §§ 1334(b), 1408, 1409.

The review of the Attorneys' fee arrangement with a chapter 7 debtor is a core proceeding

regarding which the Court may enter final orders.  28 U.S.C. § 157(b)(2)(A).

Attorney fees owed under prepetition agreements are not excepted from a debtor's

chapter 7 discharge pursuant to § 523.  *Rittenhouse v. Eisen*, 404 F.3d 395, 396 (6th Cir. 2005).

In *Rittenhouse*, the Sixth Circuit held that this conclusion follows inescapably from the Code's

text, and stated that it isn't a court's role to alter legislative policies:

> Appellant asserts that if debts created by pre-petition agreements to pay attorney
> fees are not [*sic*] discharged, the benefits of bankruptcy will not be available to
> those who need it most, i.e., those who are unable to pay attorney fees in advance
> of filing.  Appellant argues that in order to pay an attorney, the potential bankrupt
> would have to unjustly withhold payments due to suppliers of necessities, such as
> public utilities, to the detriment of the general public.  Although that argument
> may have merit, it raises a policy question which is properly addressed to
> Congress, not to the court. "The judiciary's job is to enforce the law Congress
> enacted, not to write a different one that judges think superior."

*Id.* at 397 (quoting *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1128 (7th Cir. 2003)).

The Sixth Circuit released its opinion in *Rittenhouse* not long after the Supreme Court held that a

chapter 7 debtor's counsel cannot be paid from estate property absent authorization under

§ 330(a)(1) and any prepetition attorney's fee due is dischargeable.  *Lamie v. United States Tr.*,

540 U.S. 526, 537 (2004).  As a result, an attorney that takes a post-petition action to collect on

unpaid prepetition fees as a personal liability of the debtor violates either the automatic stay in

§ 362(a) or the discharge injunction in § 524.  *In re Gourlay*, 483 B.R. 496, 500 (Bankr. E.D.

Mich. 2012), *aff'd* 496 B.R. 857 (E.D. Mich. 2013).

The ramifications of *Lamie* and *Rittenhouse* are multifaceted for potential chapter 7

debtors and their lawyers.  Many commenters have discussed the practical realities and

corresponding difficulties these decisions produced.[6]  Others have critiqued common work-around methods that were created in response.[7]  And many courts, including some within the Sixth Circuit, have analyzed those work-around methods to determine whether they comply with the Code and applicable ethical requirements.[8]

The Code requires a debtor's attorney (including counsel representing chapter 7 debtors) to disclose compensation "paid or agreed to be paid … for services rendered or to be rendered in contemplation of or in connection with" a bankruptcy case.  11 U.S.C. § 329(a); *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 720 (6th Cir. 2001) ("An attorney in a bankruptcy case has an affirmative duty to disclose fully and completely all fee arrangements and payments.").  This disclosure statement typically must be filed within 14 days of the order for relief.  FED. R. BANKR. P. 2016(b).

The bankruptcy court, in turn, has an independent duty to examine the fees for reasonableness under § 329(b).  *See, e.g.*, *In re Ortiz*, 496 B.R. 144, 148 (Bankr. S.D.N.Y. 2013) ("The Court has an 'independent duty to review any fee application, even in the absence of an objection from an interested party.'" (citation omitted)); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 668 (4th Cir. 1989) ("any payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court [under § 329]

---

[6] *See, e.g.*, Katherine M. Porter, et al., "'No Money Down' Bankruptcy," 90 S. Cal. L. Rev. 1055, 1077 (2017); Daniel E. Garrison, "Liberating Debtors from 'Sweatbox' and Getting Attorneys Paid: Bifurcating Consumer Chapter 7 Engagements," AM. BANKR. INST. J., June 2018, at 16; Hon. Maureen A. Tighe, "Seeking Innovation to Address Low-Income Access to Bankruptcy," AM. BANKR. INST. J., Nov. 2018, at 38.

[7] *See, e.g.*, Adam D. Herring, "Problematic Consumer Debtor Attorneys' Fee Arrangements and the Illusion of 'Access to Justice,'" AM. BANKR. INST. J., Oct. 2018, at 32.

[8] *See, e.g.*, *In re Waldo*, 417 B.R. 854 (Bankr. E.D. Tenn. 2009); *In re Lawson*, 437 B.R. 609 (Bankr. E.D. Tenn. 2010); *In re Slabbinck*, 482 B.R. 576 (Bankr. E.D. Mich. 2012); *In re Abdel-Hak*, No. 12-46329-MBM, 2012 Bankr. LEXIS 5393 (Bankr. E.D. Mich. November 16, 2012); *In re Gourlay*, 483 B.R. 496 (Bankr. E.D. Mich. 2012), *aff'd* 496 B.R. 857 (E.D. Mich. 2013); *In re Michel*, 509 B.R. 99 (Bankr. E.D. Mich. 2014); *In re Mansfield*, 394 B.R. 783 (Bankr. E.D. Pa. 2008); *In re Wright*, 591 B.R. 68 (Bankr. N.D. Okla. 2018); *In re Hazlett*, No. 16-30360, 2019 WL 1567751 (Bankr. D. Utah Apr. 10, 2019).

notwithstanding the source of payment.").    In *In re Netoche Brigham Fair*, Case No. 15-33400-

SGJ-13, 2016 Bankr. LEXIS 2043 (Bankr. N.D. Tex. May 18, 2016), the court reasoned:

> The honest and comprehensive disclosure of compensation payments plays a vital
> role in maintaining the integrity of the bankruptcy system. Moreover, it is only
> upon full and complete disclosure of compensation payments under section 329(a)
> of the Bankruptcy Code and Rule 2016 that this court is able to review and
> determine whether such payments were excessive under section 329(b) of the
> Bankruptcy Code and Rule 2017. … Because of the importance of this process, a
> bankruptcy court retains the power, authority, and duty to police the disclosure
> and reporting requirements set forth in the Bankruptcy Code and Rules with its
> sanctioning powers, including the power to order the disgorgement of all sums
> received by counsel and the forfeiture of all compensation paid to counsel in a
> particular case.

*Id.* at *48-49 (footnotes omitted)).    The Sixth Circuit has explained that "bankruptcy courts have

broad and inherent authority to deny any and all compensation where an attorney fails to satisfy

the requirements of the Code and Rules."    *Kisseberth* at 721 (citation omitted).

There is no express guidance from the Sixth Circuit (or from courts in this District) on

dual contracts for the representation of debtors in chapter 7 cases.    Absent such authority, as a

matter of first impression in the District, this opinion assesses whether the Attorneys'

compensation arrangement with Debtor is permissible.

**I.      The Attorneys' representation of Debtor under dual contracts satisfies the
requirements in the Code, the Bankruptcy Rules, and applicable ethical rules.**

**A.      The Attorneys and Debtor executed written contracts in compliance with
§ 528(a)(1).**

A debtor's attorney is considered a "debt relief agency" under the Code.    11 U.S.C. §

101(12A); *see also Milavetz, Gallop & Milavetz v. United States*, 559 U.S. 229, 235-36 (2010).

Section 528(a) therefore required the Attorneys to satisfy certain obligations:

(a) A debt relief agency shall—

(1) not later than 5 business days after the first date on which such agency
provides any bankruptcy assistance services to an assisted person, but prior to

such assisted person's petition under this title being filed, execute a written contract with such assisted person that explains clearly and conspicuously—

    (A) the services such agency will provide to such assisted person; and

    (B) the fees or charges for such services, and the terms of payment;

  (2) provide the assisted person with a copy of the fully executed and completed contract[.]

11 U.S.C. § 528(a).

There is no dispute that the Attorneys and Debtor executed the First Contract at their initial meeting, before the Attorneys filed Debtor's petition. It "clearly and conspicuously" outlined the services that the Attorneys would perform, the fees charged for those services, and the payment terms. Debtor received a fully-executed copy of the First Contract and a copy of the Disclosure that further detailed the Dual Contract Option. There also is no dispute that, at a subsequent, post-petition meeting, Debtor and the Attorneys executed the Second Contract that also "clearly and conspicuously" outlined the post-petition services that the Attorneys would perform, the fees charged for those services, and the payment terms. Debtor also received a fully-executed copy of the Second Contract. The Court concludes that the Attorneys complied with their obligations under § 528(a).

    **B.**    **The Attorneys did not advise Debtor to incur debt to pay for legal services and did not factor Debtor's post-petition obligation.**

The Code prohibits a "debt relief agency" from advising a debtor to "to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title." 11 U.S.C. § 526(a)(4). "[T]he statute contains two distinct prohibitions—one about incurring debt in anticipation of bankruptcy filings generally, and the

12

other about incurring debt to pay for bankruptcy-related legal services more specifically."
*Cadwell v. Kaufman*, 886 F.3d 1153, 1156 (11th Cir. 2018).

With respect to the first prohibition, the Attorneys did not improperly advise Debtor to incur debt in contemplation of bankruptcy. *See generally Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, (2010) (concluding that a debt relief agency violates the first prohibition if it advises a debtor to incur debt for an invalid purpose designed to manipulate the bankruptcy process). As to the second prohibition, the Eleventh Circuit explained that it "is aimed at one specific kind of misconduct—in essence, a bankruptcy lawyer saying to his client, 'You should take on additional debt to pay me!'" *Cadwell*, 886 F.3d at 1159. As a result, "an attorney violates Section 526(a)(4) if he instructs a client to pay his bankruptcy-related legal fees using a credit card." *Id.* at 1155. This prohibition does not prevent a debtor from paying their counsel's legal fees directly over time. Here, the Attorneys required Debtor to pay for services under the Second Contract monthly via bank account automatic withdrawals. Accordingly, the Dual Contract Option does not raise concerns under § 526(a)(4).

In addition, the Attorneys do not enter into agreements whereby they sell client accounts receivable; thus, the Court needs not address the propriety of factoring attorneys' fees in this case.[9]

---

[9] The Kentucky Bar Association has not issued an ethics opinion on this issue, although other bar associations have done so. *Compare* Ariz. Op. 98-05 (finding, *inter alia*, that it is unethical for a lawyer to sell client accounts receivable to a factor because proper informed consent cannot be obtained) *with* Utah Ethics Opinion No. 17-06 (revised) ("It is not unlawful for lawyers to sell or encumber their accounts receivable, whether or not the work has been accomplished. … This is equally true for consumer bankruptcy lawyers.").

**C.**    **The Attorneys did not take payment of post-petition legal fees prior to full payment of the chapter 7 filing fee, and therefore there is no violation of Rule 1006(b)(3).**

Rule 1006, which implements 28 U.S.C. § 1930, requires bankruptcy filing fee installments to be paid within 120 days after a debtor files a bankruptcy petition. The Rule specifically prohibits a debtor's attorney from receiving any fee payments before the filing fee is fully paid:

> *Postponement of attorney's fees.* All installments of the filing fee must be paid in full before the debtor or chapter 13 trustee may make further payments to an attorney or any other person who renders services to the debtor in connection with the case.

FED. R. BANKR. P. 1006(b)(3).

The Second Contract provides that Debtor's monthly payments first will be applied to the amounts owed on her filing fee and then to the interest and principal due under the Second Contract. Debtor's full filing fee was paid by September 22, 2019. The Attorneys confirmed at the hearing that they did not apply payments received from Debtor towards the legal fees owed for post-petition services until after the full amount of Debtor's filing fee was paid. This arrangement complies with Rule 1006(b)(3).

**D.**    **The Attorneys were not among Debtor's creditors as of the petition date, which renders *Rittenhouse* inapplicable.**

The Attorneys received $300 from Debtor prepetition. In exchange for that payment, they performed specific prepetition legal services under the First Contract. The parties' fee-for-services contractual relationship ended, by its terms, after the Attorneys provided those services. Debtor owed the Attorneys no additional money in exchange for contracted-for services on the petition date. Therefore, Dennery, PLLC properly was not listed as a creditor on Debtor's bankruptcy schedules because Debtor did not owe a debt to the Attorneys as of the petition date, and they had no claim against Debtor. Thus, the issue in *Rittenhouse*—that a pre-petition

14

agreement to pay attorney fees does not fall within an exception to a chapter 7 discharge under

§ 523—is not an issue in this case.

      **E.**      **The Attorneys disclosed a reasonable compensation arrangement with Debtor.**

On August 14, 2019, the Attorneys filed the Fee Statement required by Rule 2016(b) and

§ 329(a).  The Disclosure accurately stated that Debtor paid the Attorneys $300 prepetition and

that Debtor promised to pay them $1,185 post-petition (which includes the $335 filing fee).  The

UST does not contend that the compensation charged to Debtor for the Attorneys' services is

unreasonable.[10]  Michael L. Baker, Esq., the appointed Chapter 7 Trustee in this case, does not

contend that the amounts Debtor agreed to pay the Attorneys for services are unreasonable.  The

Court, which is familiar with the fees charged for consumer-related chapter 7 cases in this

District, also concludes that the fees the Attorneys charged Debtor are reasonable.  But this does

not end the inquiry.

First, UST correctly notes that attorneys appearing in bankruptcy cases before this Court

may not withdraw from representing a debtor absent the Court's approval.  Joint Ky. Civ. Prac.

R. 83.6 (made applicable by KYEB LR 1001-3).  In this case, while the First Contract states that

it will terminate upon the completion of the services the Attorneys agreed to provide thereunder,

they did not move to withdraw from representing Debtor after they filed the Skeletal Chapter 7

Case.  Because Debtor retained the Attorneys again post-petition and they did not attempt to

---

[10] Given its role in the bankruptcy system, the Court solicited and received input from the UST, both before and after the scheduled hearing, concerning the Attorneys' chapter 7 fee arrangements.  Based on the record and Debtor's testimony at her first meeting of creditors, the UST advised it "does not believe that the arrangement in general between the Debtor and counsel is unreasonable" and that Debtor testified at her § 341 meeting "that she had, in fact, understood and consented to [Counsel's] practice, as explained in their disclosures and agreements." [ECF No. 49 at ¶¶ 2-5.]  Finally, UST advised that, while as a policy matter it "avoids fee regulation if the attorney performs the services contracted for consistent with applicable law," UST did not find the Attorneys' fee to be unreasonable.  [*Id.* ¶ 6.]

withdraw from this case (with or without the Court's approval) before the Second Contract's execution, the Attorneys did not violate the local rule. The Court leaves for another day the issues that may be raised in other cases upon the post-petition filing of a Motion to Withdraw.

Next, Trustee Baker commented on the Attorneys' fee practices at the hearing and filed a post-hearing brief summarizing his concerns with those practices. [ECF No. 50.] Trustee challenges the structure of the fee arrangements. He essentially avers that the Attorneys did more work prepetition than post-petition and, therefore, should have been paid more prepetition for that prepetition work. But this argument is based on an assumption that the Court does not accept.

Trustee notes that the Attorneys met with Debtor prepetition for a significant period (what Debtor described as several hours at her § 341 meeting), far longer than their second, post-petition meeting. He contends that a bankruptcy practitioner must conduct a meaningful initial client interview to understand a potential debtor's options, to provide appropriate advice, and to prepare even a Skeletal Chapter 7 Case and a list of known creditors. His brief effectively assumes that the Attorneys satisfied this obligation to Debtor but argues that they shifted the cost burden for some portion of that initial meeting so that it became a post-petition obligation for Debtor. As a result, Trustee Baker concludes that the Attorneys' payment arrangement with Debtor is flawed.

Trustee Baker compares the amount of work done prepetition (based on the time the Attorneys spent with Debtor) with the amount of work Mr. Baker expects was necessary in this case post-petition. He then assumes that an arrangement to make greater total payments post-petition must be compensating the Attorneys for more extensive prepetition work. The record does not support this assumption.

16

Under the Second Contract, the Attorneys agreed to have a post-petition meeting with Debtor; to review Debtor's documents and any additional information provided; to prepare and file any documents or other materials required to satisfy Debtor's obligations under the Code that correlate with filing the petition, including the preparation and filing of Debtor's Schedules; to provide necessary information to the UST and to Trustee Baker on Debtor's behalf; to pay the $335 filing fee; to prepare Debtor for, travel to, and attend the § 341 meeting of creditors; and to perform several other tasks. In exchange, the Attorneys agreed to accept $800 as a fee for these post-petition services (plus $335 for advancing the filing fee).

Trustee Baker assumes, in effect, that the Attorneys must charge Debtor a comparable hourly rate for prepetition and post-petition work. This is incorrect. The Attorneys essentially agreed to perform prepetition services for one flat rate and post-petition services for a second flat rate. No party has argued that either flat rate was unreasonable.

Moreover, Trustee Baker does not estimate or provide evidence of the amount of time the Attorneys expended to perform either the pre- or post-petition work. To the extent any evidence in the record bears on this issue, the Second Contract states that the Attorneys bill $200/hour for attorney time and $85/hour for paralegal time. It does not appear unreasonable to the Court that the amount of time the Attorneys may need to devote to post-petition services for Debtor under the Second Contract easily could meet or exceed four hours of attorney time (let alone any time spent by a paraprofessional to assist with document preparation or perform other appropriate tasks). As no party challenges the reasonableness of the post-petition fee, there is no basis to find that the Attorneys will not have to perform sufficient legal work to earn their post-petition fee, or that they are being paid post-petition for prepetition work.

Finally, the Court takes issue with one aspect of the Attorneys' performance of their disclosure requirements under the Code and the Rules.  The Fee Statement did not provide detail to explain Debtor's two contracts.  Had the Attorneys been more forthcoming on the Fee Statement concerning the payment arrangements discussed herein, it would have eliminated substantial confusion.  In the future, the Attorneys' fee statements must be more specific about the existence and scope of dual contracts in the same case.

**F.    The structure of Debtor's fee agreements with the Attorneys complies with Kentucky's Rules of Professional Conduct.**

The United States District Court for the Eastern District of Kentucky, by Local Rule 83.3, has determined that the Kentucky Supreme Court Rules govern attorneys practicing before courts in this District.  The Kentucky Rules of Professional Conduct provide: "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."  Ky. S.C.R. 3.130(1.2).  "Reasonable" in this context "denotes the conduct of a reasonably prudent and competent lawyer."  Ky. S.C.R. 3.130(1.0(h)).  "'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."  Ky. S.C.R. 3.130(1.0(e)).  The Kentucky Supreme Court has held that "limited-representation agreements … are permissible so long as they are reasonable under the circumstances and otherwise comport with our rules of practice and procedure[.]"  *Persels & Assocs., LLC v. Capital One Bank*, 481 S.W.3d 501, 504 (Ky. 2016).  No party in this proceeding, including UST, argues that the Attorneys improperly limited the scope of representation of Debtor under Kentucky's Rules of Professional Conduct in the manner effected through the Dual Contract Option.

The first requirement under Kentucky Supreme Court Rule 3.130(1.2) is that the limitation on the scope of the Attorneys' representation had to be reasonable. Debtor approached the Attorneys for bankruptcy representation. At their lengthy initial meeting, based on information that Debtor provided, the Attorneys concluded that it would be appropriate for her to file a chapter 7 case. The Attorneys told Debtor about the two alternatives they offered for chapter 7 representation and explained each one. Debtor chose the Dual Contract Option. Offering the First Contract was a reasonable action that afforded Debtor access to bankruptcy and the benefit of the automatic stay. The Attorneys explained that additional post-petition work was required in her bankruptcy case, and that she should retain counsel to assist with that post-petition work. The Attorneys discussed that they could perform that post-petition work for Debtor under a second fee agreement. A short time thereafter, Debtor had another meeting with the Attorneys, retained them under the Second Contract to perform post-petition services, and agreed to pay the post-petition fees pursuant to a specific monthly payment plan. On these facts, the Court concludes that it was reasonable for the Attorneys to limit the scope of the initial representation to Debtor as effected through the Dual Contract Option.

The second requirement under Kentucky Supreme Court Rule 3.130(1.2) is that, to limit the scope of their services to those set forth in the First Contract, the Attorneys must have obtained Debtor's informed consent in writing. As detailed above, the Attorneys provided a comprehensive written explanation of the Dual Contract Option to Debtor via the Disclosure. They walked through the Disclosure's terms with Debtor in person. When discussing the terms of the Disclosure, the First Contract, and the Second Contract with Debtor, the Attorneys had Debtor sign each document. No evidence suggests that Debtor did not understand the scope of and limitations on the First Contract or any other aspect of the fee arrangements. There is no

19

suggestion that the Attorneys coerced Debtor to choose the Dual Contract Option. Instead, to

obtain access to bankruptcy, Debtor availed herself of the Attorneys' willingness to segregate

their legal services through dual contract fee arrangements. The Court finds that the Attorneys

obtained Debtor's informed consent in writing. As a result, the Court finds that the Attorneys'

limited scope engagement by Debtor did not violate Kentucky Supreme Court Rule 3.130(1.2).

The Attorneys' arrangement with Debtor also satisfies other applicable ethics rules. As

explained above, the Attorneys took appropriate steps to gather information from Debtor to

assess her needs and provide competent representation, which ultimately led to Debtor obtaining

a chapter 7 discharge. Ky. S.C.R. 3.130(1.1). No party argues that the agreed-upon arrangement

for services resulted in the Attorneys failing to act on Debtor's behalf with reasonable diligence

and promptness. Ky. S.C.R. 3.130(1.3). The Attorneys entered into agreements for reasonable

fees with Debtor as required. Ky. S.C.R. 3.130(1.5). Those written contracts and the

Disclosures allowed Debtor to make informed decisions regarding her representation in the

bankruptcy case. Ky. S.C.R. 3.130(1.4(b)).

The Court is aware of authority stating that certain conduct in a bankruptcy proceeding is

so fundamental to the representation of a debtor that a reasonable lawyer cannot limit the scope

of representation to avoid providing those services. *See, e.g.*, *In re Ortiz*, *supra*, 496 B.R. at 149-

50 (interpreting New York ethics rules and citing multiple cases for the proposition that

counsel's attendance at the § 341 meeting is a "'fundamental and core obligation' of any attorney

representing a debtor."). While other courts may reach decisions on how attorneys may limit the

scope of their representation of clients based on ethical rules applicable in those cases, the Court

finds that the Attorneys' actions and the Dual Contract Option in this case comply with

Kentucky's ethical requirements.

In sum, based on the record, the Court finds no ethical problem with or resulting from the agreed-upon fee structure for the Attorneys' representation of Debtor.

## II.     The Dual Contract Option comports with persuasive case law on separate fee agreements.

It appears to the Court that the Attorneys made great efforts to propose separate fee arrangements that comport with case law in which other attorneys have successfully formulated such arrangements.  For example, in *In re Slabbinck*, 482 B.R. 576 (Bankr. E.D. Mich. 2012), the bankruptcy court approved a fee arrangement in which counsel provided legal services to chapter 7 debtors using separate prepetition and post-petition agreements.  Upon review of pertinent Michigan ethical rules and related authority, the court held that the arrangement was not improper and that the attorney could be compensated for post-petition chapter 7 services under a post-petition agreement.

Similarly, in *In re Hazlett*, No. 16-30360, 2019 WL 1567751 (Bankr. D. Utah Apr. 10, 2019), a law firm provided chapter 7 services to a debtor whereby the attorney received no prepetition fee and agreed to accept $2,400 post-petition in ten monthly installments.  The debtor and the firm executed both a prepetition and a post-petition agreement, and the firm had the debtor sign documents that explained the bankruptcy process, contained pertinent disclosures, and offered warnings about the failure to take necessary actions.  After the UST representative in that region objected to the arrangement and moved for sanctions, the bankruptcy court denied the motion.  The court determined that no applicable law or ethical rules barred the fee arrangement. Further, the court found that the arrangement was acceptable because it was in the debtor's best interests, the firm provided sufficient disclosures and obtained informed written consent from the client, and the firm's fees charged for the services provided were reasonable and necessary.

21

Finally, a bankruptcy court accepted an arrangement involving prepetition and post-petition contracts in *Walton v. Clark & Washington, P.C.*, 469 B.R. 383 (Bankr. M.D. Fla. 2012), stating that "there is nothing inherently wrong with a lawyer giving terms to clients for the payment of legal services." *Id*. at 386. The prepetition contract presented to the debtor (under which the law firm would prepare and file the chapter 7 petition) detailed the law firm's two-contract system and the client's post-petition options (proceed *pro se*, retain the law firm, or retain a different attorney or firm). The debtor then would have a two-week period in which to decide which option to pursue, during which time the firm would continue to serve as the debtor's counsel—and the firm would remain in place until the court approved its withdrawal.

Here, the Attorneys assiduously followed the best practices drawn from these cases. They made full disclosures to Debtor so that Debtor could make an informed decision. Their efforts, reasonable fee arrangement, and willingness to provide access to the courts in this manner allowed Debtor to retain and pay for legal counsel and receive a chapter 7 discharge.

## **CONCLUSION**

Not all multiple fee arrangements will pass muster. Different circumstances involving different debtors may require different processes or even render an arrangement like the one discussed herein an improper practice. But in this instance, the Attorneys proceeded reasonably and after having obtained Debtor's informed consent in writing. They accepted reasonable fees for prepetition work under their prepetition contract and agreed to a reasonable payment arrangement for their fees for post-petition work under their post-petition contract.

As a result, it is ORDERED that the Court will take no action under § 329(b) to disrupt the fee arrangements in this case.

It is further ORDERED that the Attorneys are instructed to provide greater clarity about multiple contract fee arrangements in their Rule 2016(b) disclosures in future cases.

23

The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.



Signed By:
_Tracey N. Wise_
**Bankruptcy Judge**
**Dated: Wednesday, January 22, 2020**
**(tnw)**